**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROBBY B. BARNETT, | ) | CASE NO.   3:15-cv-02195 |
| Petitioner, | ) | |
| | ) | JUDGE PATRICIA A. GAUGHAN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| NEIL TURNER, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Robby B. Barnett (hereinafter "Petitioner" or "Barnett"), challenges the

constitutionality of his conviction in the case of *State v. Barnett*, Auglaize County Court of

Common Pleas Case No. 2013-CR-55.   Petitioner, *pro se*, filed his Petition for a Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254 on October 23, 2015. (R. 1).   On March 4, 2016, Warden

Neil Turner ("Respondent") filed his Answer/Return of Writ. (R. 6).   Petitioner filed a traverse on

April 18, 2016 (R. 8), to which Respondent filed a reply. (R. 9).   This matter is before the

undersigned Magistrate Judge pursuant to Local Rule 72.2.   For reasons set forth in detail below,

it is recommended that the habeas petition be DENIED.

## I.   Summary of Facts

Factual determinations made by state courts are presumed correct in a habeas corpus

proceeding instituted by a person in custody pursuant to the judgment of a state court. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court factual findings are presumed correct unless rebutted by clear and convincing evidence.")   The Third District Court of Appeals (hereinafter "state appellate court") summarized the facts underlying Barnett's conviction as follows:

{¶ 2} On May 4, 2011, shortly before midnight, there was a fire in Auglaize County in a trailer belonging to one Jeff Aldrich ("Aldrich"). (Jury Trial Tr. at 180.) When the emergency personnel arrived, Aldrich was found dead on his couch. (Tr. at 186–188.)   An investigation led the police to Barnett. (Tr. at 852-853, 865.)   On May 17, 2011, upon a search of Barnett's residence located in Logan County, the police found and seized evidence of drug manufacturing. (Tr. at 550–560; State's Ex. 136–149.)   The items found were consistent with cooking methamphetamine and were similar to items found in Aldrich's trailer. (Tr. at 550-560; 735-738;, 896-898.)   Additionally, the residence bore signs of a prior fire or fires. (*Id*.; Ex. 137-142, 171; 669–671.)   Based on the evidence found in Barnett's apartment, on September 13, 2011, charges were filed against him in Logan County for illegal assembly or possession of chemicals for the manufacture of drugs, illegal manufacture of drugs, and possession of drugs. *See State v. Barnett*, 3d Dist. Logan No. 8-12-09, 2013-Ohio-2496, ¶2 (June 17, 2013).   Those charges were based on Barnett's actions in Logan County and did not directly relate to the Auglaize County fire in Aldrich's trailer. *See id*.   Although we are not reviewing the Logan County case at this point, the issues before us require that we mention it.

{¶ 3} On February 26, 2013, Barnett was charged in the current case.   The indictment alleged that on May, 4, 2011, in Auglaize County, Ohio, Barnett caused the death of another as a proximate result of committing or attempting to commit a felony. (R. at 1, Indictment.)   It further alleged that Barnett possessed chemicals for the manufacture of methamphetamine and engaged in illegal manufacture of methamphetamine on the same date in Auglaize County. (*Id*.)   These charges were connected to the fire in Aldrich's residence in Auglaize County on May 4, 2011. R. at 56, State's Resp. Def.'s Req. for Bill of Particulars.)   In particular, the State alleged that the fire at Aldrich's residence, which resulted in Aldrich's death, was caused by the illegal manufacturing of methamphetamine in which Barnett participated on May 4, 2011. (*Id*.)

{¶ 4} Barnett pled not guilty and the matter was scheduled for a jury trial.   The trial court appointed attorney Gerald Siesel ("attorney Siesel") from the Auglaize County Public Defender's Office as Barnett's defense counsel. (R. at 16.)   On August 22, 2013, Barnett filed a motion in limine, requesting that the State be prevented "from introducing into evidence at trial testimony of prior and/or similar

acts of the Defendant resulting from the search of defendant's former residence * * * [in] Logan County, Ohio, pursuant to a warrant to search issued on May 17, 2011." [note 2] (R. at 184.)   Barnett alleged "that the admission of this evidence as 'other prior and/or similar acts'" would violate Ohio Evid.R. 402, 403, and 404(B), as well as his due process right, the United States Constitution, and the Ohio Constitution. (*Id.*)   The trial court conducted hearings on the matter and denied the motion. (R. at 211, J. Entry, Sep. 10, 2013.)   The trial court found that

> [t]he evidence is relevant pursuant to Evidence Rule 403, and for the most part is not really "other act" testimony but is circumstantial evidence of the Defendant's involvement in the instant acts. * * * [E]vidence of his possession of materials to make methamphetamine is relevant to the charges, as well as evidence of prior fires within his other property in Logan County goes to show scienter of the volatile nature of cooking methamphetamine. Even if a portion of the testimony is considered "other act" evidence, the testimony is relevant as being within "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" with Evid.R. 404(B). (*Id.*)

{¶ 5} The jury trial started on September 16, 2013, and lasted five days.   The jury found Barnett guilty of all counts in the indictment and this appeal followed.

[Note 2] Barnett further requested that the State "be prevented from presenting in its case in chief at trial in this matter evidence relating to the Defendant's conviction for assembly/possession of chemicals used in the manufacture of methamphetamines * * * in the Logan County Common Pleas Court, Case No. CR-11-08-0157." (R. at 184.)   The State indicated that it would not use evidence of the conviction at trial (Pending Mot. Hr'g at 8), and no assignment of error is raised with respect to that.

*State v. Barnett*, 2015-Ohio-224, ¶¶ 2-5, *appeal not allowed*, 2015-Ohio-2104, ¶¶ 2-5, 142 Ohio St. 3d 1478, 31 N.E.3d 655 (Ohio Ct. App. Jan. 26, 2015).

## II.   Procedural History

### A.   Conviction

On February 21, 2012, an Auglaize County Grand Jury charged Petitioner with one count of involuntary manslaughter in violation of Ohio Revised Code ("O.R.C.") § 2903.04(A), one count of the illegal manufacture of a controlled substance in violation of O.R.C. § 2925.04(A)(C)(3)(a), and one count of assembly or possession of chemicals used to manufacture

controlled substance with intent to manufacture a controlled substance in violation of O.R.C. § 2925.041. (R. 6-1, PageID# 96-97, Exh. 1).

After Barnett's initial counsel withdrew, Petitioner was appointed counsel from the Auglaize County Public Defender's office. (R. 6-1, PageID# 99-102, Exhs. 2-4).   Through counsel, Barnett filed a motion to suppress evidence seized pursuant to a warrantless search of the victim's residence, a motion to suppress electronic evidence and GPS data seized from Sprint/Nextel Communications, and a motion to suppress evidence seized from both his residence and his person, specifically blood and urine test results. (R. 6-1, PageID# 103-113, Exhs. 5-7). On August 6, 2012, after conducting a hearing, the trial court overruled Barnett's motions to suppress. (R. 6-1, PageID# 114-122, Exh. 8).

On October 26, 2012, upon the State's motion, the trial court dismissed the case without prejudice. (R. 6-1, PageID# 123, Exh. 9).

On February 26, 2013, Petitioner was re-indicted and an Auglaize County Grand Jury again charged him with one count of involuntary manslaughter in violation of O.R.C. § 2903.04(A), one count of the illegal manufacture of a controlled substance in violation of O.R.C. § 2925.04(A)(C)(3)(a), and one count of assembly or possession of chemicals used to manufacture controlled substance with intent to manufacture a controlled substance in violation of O.R.C. § 2925.041. (R. 6-1, PageID# 124-126, Exh. 10).

On March 15, 2013, through counsel, Petitioner again filed a motion to suppress electronic evidence and GPS data seized from Sprint/Nextel Communications, as well as a motion to suppress evidence seized from both his residence and his person. (R. 6-1, PageID# 129-134, Exhs. 12-13).   After holding suppression hearings on May 31, 2013 (R. 6-2, PageID# 385-404) and July 16, 2013 (R. 6-4, PageID# 436-549), the trial court overruled Barnett's motions. (R. 6-1, PageID#

138-144, Exh. 16).

On July 9, 2013, at the final pre-trial hearing, Barnett requested that his attorney be dismissed due to ineffective assistance, but the trial court found that "the conduct of the Defense Counsel did not rise to the level of ineffective assistance and the Court encouraged the Defendant and Defense Counsel to improve communications" and refused to appoint new counsel "in light of lengthy preparation required and [defense counsel's] experience as a qualified death sentence defense counsel and his long track record in this Defendant's cases." (R. 6-1, PageID# 136, Exh. 15).

On August 19, 2013, the State filed a motion *in limine* to prohibit the defense from introducing evidence of a State witness's bipolar disorder or the reasons for which the same witness was not admitted into the United States Marine Corps. (R. 6-1, PageID# 145, Exh. 17). On August 22, 2013, Barnett, through counsel, also filed a motion *in limine* seeking to prohibit the State from:

1. [I]ntroducing into evidence at trial testimony of prior and/or similar acts of the Defendant resulting from the search of Defendant's former residence located at 114 Chase Street, Russells Point, Logan County, Ohio, pursuant to a warrant to search issued on May 17, 2011.

2. [P]resenting in its case in chief at trial … evidence relating to the Defendant's [prior] conviction for assembly/possession of chemicals used in the manufacture of methamphetamines, in violation of O.R.C. Section 2925.041(A)….

(R. 6-1, PageID# 147-149, Exh. 18).   The trial court sustained the State's motion. (R. 6-1, PageID# 150, Exh. 19).   After holding a hearing on September 6, 2013 (R. 6-6, PageID# 594-604), the trial court denied Barnett's motions. (R. 6-1, PageID# 153-154, Exh. 21).

On September 23, 2013, a jury found Petitioner guilty as charged. (R. 6-1, PageID# 155-156, Exh. 22).   On October 1, 2013, the trial court merged the illegal manufacture of drugs

and illegal assembly of chemicals convictions into Petitioner's involuntary manslaughter

conviction and sentenced him to a term of ten years in prison along with five years of mandatory

post-release control. (R. 6-1, PageID# 157-159, Exh. 23).   The trial ordered that his sentence

should run consecutive to Barnett's convictions in Logan County Case No. CR-11-08-0157. (*Id.*)

**B.    Direct Appeal**

On October 31, 2013, Petitioner, through new counsel, filed a Notice of Appeal with the

state appellate court. (R. 6-1, PageID# 160, Exh. 24).   Petitioner raised the following assignments

of error:

1.  Robby Barnett's due process and fair trial rights were violated when the trial
    court allowed the State to present unrelated and prejudicial evidence about his
    home in Logan County. Ohio Evidence Rules 403 and 404(B), R.C. 2945.59,
    Fifth and Fourteenth Amendments to the United States Constitution, and
    Section 16, Article I of the Ohio Constitution.

2.  Ineffective assistance of trial counsel for failing to move for a mistrial, failing to call
    Tracy Gilbertson as a defense witness, and failing to call Gina Lopez as a defense
    witness.[1]

(R. 6-1, PageID# 162-196, 241-272, Exhs. 25 & 29).

On January 26, 2015, the state appellate court affirmed Petitioner's conviction and sentence.

(R. 6-1, PageID# 273-290, Exh. 30).

On March 9, 2015, Petitioner, *pro se*, filed a Notice of Appeal with the Supreme Court of

Ohio. (R. 6-1, PageID# 291-292, Exh. 31).   Petitioner raised the following propositions of law in

his jurisdictional memorandum:

1.     Appellant was denied effective assistance of counsel guaranteed under the
       Sixth Amendment of the United States Constitution and Ohio Constitution
       Article I, Section 10.

---

[1] The second assignment of error stems from a brief Petitioner submitted *pro se* subsequent to his
counsel's appellate brief.   The state appellate court addressed Petitioner's *pro se* argument in its decision.
(R. 6-1, PageID# 285-289, Exh. 30).

2.      Appellants right against self [in]crimination was violated under the Fifth Amendment of the United States and Ohio Constitution Article I, Section 10.

3.      Appellants due process rights under the Fourteenth Amendment of the United States Constitution and Ohio Constitution Article I, Section 16 were violated when the Court allowed unrelated other acts evidence presented at trial.

(R. 6-1, PageID# 293-323, Exh. 32).

On June 3, 2015, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (R. 6-1, PageID# 342, Exh. 34).

**C.      Application to Reopen Appeal**

On April 10, 2015, Petitioner, *pro se*, filed an application to reopen his appeal pursuant to Ohio App. R. 26(B). (R. 6-1, PageID# 343-352, Exh. 35).   Petitioner argued that appellate counsel was ineffective for failing to raise the following argument:

The Appellants [sic] Sixth and Fourteenth Amendment Rights were violated when he was sentenced to maximum and consecutive sentences in contravention to Ohio Revised Code §2929.41(A); and laws under *Apprendi v. New Jersey* 120 S.Ct. 2368 and *Blakely v. Washington* 124 S.Ct. 2531.

(*Id.*)

On June 4, 2015, the state appellate court denied Petitioner's application to reopen, finding appellate counsel was not ineffective as the sentence imposed was not unconstitutional. (R. 6-1, PageID# 367-368, Exh. 37).

Barnett did not appeal the denial of his application to reopen to the Ohio Supreme Court.

**D.      Postconviction Relief Requested in Trial Court**

Before the state appellate court issued its decision on direct appeal, Petitioner filed a *pro se* petition, on April 4, 2014, moving the trial court to vacate or set aside the judgment of conviction

or sentence and requested an evidentiary hearing. (R. 6-1, PageID# 369-374, Exh. 38).   Therein,

Petitioner raised a single claim arguing trial counsel was constitutionally ineffective based on his

alleged refusal to call exculpatory witnesses, object to evidence, or cross examine witnesses.[2] (*Id.*)

On April 7, 2014, the trial court denied Barnett's post-conviction relief petition without a hearing.

(R. 6-1, PageID# 382, Exh. 41).

> Barnett did not appeal the decision to the state appellate court.

**E.    Federal Habeas Petition**

> On October 23, 2015, Barnett filed a Petition for Writ of Habeas Corpus and asserted the

following grounds for relief: [3]

> > GROUND ONE: Petitioner was denied effective assistance of counsel when
> > guranteed under the Sixth Amendment of the United States Constitution and
> > Article I, Section 10 of the Ohio Constitution.
> >
> > Supporting Facts: Counsel failed to present evidence to the jury that impeaches the
> > states witness and evidence at trial.   Counsel failed to present impeachment
> > testimony of Investigator Vorhees.   Evidence and records shows that Detective
> > Bailey was never present at Petitioners residence, Seargent Burkes statements.
> > Counsel failed to present alibi testimony and evidence of witnesses Ayris
> > Gilbertson and Gina Lopez.
> >
> > GROUND TWO: Petitioners rights against self incrimination was violated under
> > the Fifth Amendment of the United States Constitution and Ohio Constitution and
> > Ohio Constitution Article I, Section 10.
> >
> > Supporting Facts: Petitioner was interviewed by Detective Vorhees and Sergeant
> > Burke, during this interview the Petitioner made several requests for counsel.   This
> > interview was presented to the jury at trial over objection.   The trial court stopped
> > the recording and ordered the jury to be removed.   The Court did not allow the rest
> > of the recording to be played but failed to instruct the jury on what it already heard
> > afterwards.

---

[2]  In his memorandum in support, Barnett also argued that counsel erred by refusing to seek suppression of statements he made to police and by failing to move to suppress searches. (*Id.*)

[3] The grounds for relief and supporting facts have been quoted verbatim and, therefore, grammatical and spelling errors have not been corrected.

GROUND THREE: Petitioenrs Dur Process rights under the Fourteenth Amendment was violated when the trial court allowed unrelated other acts evidence to be presented at trial.

Supporting Facts: Petitioners Logan County convictions were presented at trial that were unrelated to the Involuntary manslaughter charges in this case, this was used to establish guilt.

GROUND FOUR: Petitioners Sixth and Fourteenth Amendment rights were violated when he was sentenced to maximum and consecutive sentences in contravention to Ohio Revised Code 2929.41(A); and laws under *Apprendi v New Jersey*, 120 S.Ct. 2368 and *Blakely v Washington* 124 S.Ct. 2531.

Supporting Facts: Petitioner was sentenced to ten (10) years incarceration in Auglaize County consecutive to his Logan County Conviction.   The Trial Court failed to present findings and reasons to order consecutive sentences to a jury and prove the reasons beyond a reasonable doubt.

(R. 1, PageID# 5-10).

### III.   Exhaustion and Procedural Default

**A.   Exhaustion Standard**

State prisoners must exhaust their state remedies before raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c).   This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot:   "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see also Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001) ("a petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules.")

(citations omitted).

### B.    Procedural Default Standard

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).   A claim may become procedurally defaulted in two ways. *Id.*   First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).   If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[4] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).   If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *See, e.g., Engle v. Isaac*, 456 U.S. 107, 125-130 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).   This second type of procedural default is often confused with exhaustion.   Exhaustion and procedural default, however, are distinct concepts.   The Antiterrorism and Effective Death Penalty Act's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456

---

[4]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135.   Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138-39; *accord Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

U.S. at 125 n. 28.   Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*.   In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*.   Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).   Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).   A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003), *abrogated on other grounds as recognized in English v. Berghuis*, 529 Fed. App'x 734, 744-45 (6th Cir. Jul. 10, 2013).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39.   "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)).   Meanwhile,

"[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*.   Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See, e.g., United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).   Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *Mason v. Mitchell*, 320 F.3d 604, 617 (6th Cir. 2003).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent, in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749-50. Conclusory statements are not enough.   A petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *accord Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007) (Katz, J.)

**C.     Analysis**

Respondent concedes that Barnett's first ground for relief is exhausted, but asserts that the remaining three grounds— grounds two, three, and four—are procedurally defaulted. (R. 6, PageID# 78-79, 81-89).   Petitioner contends that he exhausted all of his grounds for relief by presenting them before the Ohio Supreme Court. (R. 8, PageID# 1857-1859).   Each will be addressed in turn.

**1.   Ground Two: Fifth Amendment Violation of Right Against Self-Incrimination**

In his second ground for relief, Petitioner asserts that his right against self-incrimination, guaranteed by the Fifth Amendment of the United States Constitution, was violated when he was

interviewed by police Detective Michael Vorhees and police Sergeant Douglas Burke. (R. 1, PageID# 7). Specifically, Petitioner contends that he made several requests for counsel. (*Id*.) Petitioner states that a portion of an audio recording of the interview was played for the jury over the defense's objection. (*Id*.)

Respondent maintains that this ground for relief was not fairly presented to the state appellate court on direct appeal, but was instead first raised in Petitioner's discretionary appeal to the Supreme Court of Ohio. (R. 6, PageID# 78-79). Respondent is partially correct. In Barnett's initial appellate brief, filed by counsel, Barnett raised only one ground for relief. (R. 6-1, PageID# 172-175, Exh. 25). The substance of the lone claim was that the introduction of "other acts" evidence violated Ohio evidentiary rules, because the introduction of said evidence was unfairly prejudicial. (*Id*.) The appellate brief did not raise any of the four actions that would have alerted the state courts as to the presence of a federal constitutional claim, as it did not rely upon federal *or* state cases employing federal constitutional analysis or allege facts well within the mainstream of constitutional law. While the caption of Barnett's assignment of error does claim violations of the Fifth and Fourteenth Amendments, the brief itself makes no mention of a Fifth or Fourteenth Amendment violation and does not even reference the challenged audio recording of the interview. (R. 6-1, PageID# 172-175, Exh. 25). The Sixth Circuit has explained that "[o]ur cases view [petitioner's] isolated allusion to 'constitutional rights to due process and a fair trial' as failing to afford the [state] courts adequate notice that [he] intended to invoke the Due Process Clause." *Katt v. Lafler*, 271 Fed. App'x 479, 482 (6th Cir. 2008) (*citing Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (where a petitioner alleged that he had been deprived of "due process and a fair trial by an impartial jury" and cited the Sixth and Fourteenth Amendments, he had not "fairly presented" a federal claim to the state courts); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir.

13

2004) ("[G]eneral allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present claims' that specific constitutional rights were violated."); *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995) ("A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument.")).   To the extent appellate counsel wished to raise an argument alleging a violation of Barnett's right against self-incrimination, the mere presence of the words "Fifth Amendment"—which also includes the Due Process Clause and the prohibition against double jeopardy in addition to the prohibition against compelling a defendant to be a witness against him or herself—was insufficient to fairly present the claim.

Nevertheless, Respondent ignores the fact that Barnett filed a *pro se* supplemental appellate brief with the state appellate court.   Therein, Barnett specifically argued that he had been interviewed without being read his *Miranda* rights, that he had requested an attorney three times, that Sergeant Burke did not witness his hands until the end of the interview, and that trial counsel was, therefore, ineffective for failing to move for a mistrial.[5]  (R. 6-1. PageID# 242-244, Exh. 29).   Where the state court strikes such a filing or ignores it as outside the permitted briefing parameters, it is doubtful whether such a brief would result in fair presentation.   However, the state appellate court noted that "Barnett submitted a supplemental brief, raising an additional assignment of error *pro se*. We authorized the supplemental brief, and we consider this *pro se* issue, which we label as the second assignment of error." *Barnett*, 2015-Ohio-224 at ¶7.

---

[5] Barnet contends that had the interview ceased when he asked for counsel, Sergeant Burke would not have witnessed burns on his hands, which in turn would have precluded the subsequent search warrant allowing the inspection of his hands by medical professionals.   As a result, Barnett avers the jury would never have been allowed to see photographs of the burn marks on his hands. (R. 6-1. PageID# 242-244, Exh. 29).   Though the Court does not reach the underlying merits of the claim as only an ineffective assistance claim has been preserved, it bears noting that "[i]dentifying physical characteristics of the human body are, however, outside the protection of the Fifth Amendment." *Coley v. Konteh*, No. 3:05-CV-121, 2008 WL 341343, at *5 (N.D. Ohio Feb. 5, 2008) (Gwin, J.) (*citing Holt v. U.S.*, 218 U.S. 245, 252, 31 S.Ct. 2, 54 L.Ed. 1021 (1910)).

Given the state appellate court's express consideration of Barnett's claim of ineffective assistance of counsel due to counsel's alleged failure to challenge the admission of the audio recording and Respondent's concession that ground two was raised before the Ohio Supreme Court, the Court declines to deem the second ground for relief procedurally defaulted.   Therefore, the Court will address the merits of ground two below.[6]   Nevertheless, as Barnett's state court filing did not raise a free-standing violation of his right against self-incrimination under the Fifth Amendment except through the lens of an ineffective assistance of counsel claim, this Court will address ground two below solely in the context of an ineffective assistance claim.

### 2.  Ground Three: "Other Acts" Evidence Violated Due Process

In his third ground for relief, Petitioner avers that his due process rights were violated when the trial court allowed the prosecution to introduce "unrelated other acts evidence." (R. 1, PageID# 8, 16).   Petitioner did not file a memorandum in support of his petition, but does assert in the petition that his "Logan County convictions were presented at trial that were unrelated to the Involuntary manslaughter charges in this case," and were used to establish his guilt. (*Id.*)

Respondent asserts that the substance of ground three was not fairly presented to state courts and, therefore, is unexhausted. (R. 6, PageID# 81).   Specifically, Respondent raises two arguments in support of a finding that ground three is defaulted: (1) before the state courts, Barnett challenged the use of "other acts" *evidence* used at trial obtained from his Logan County, Ohio home, whereas the petition before the District Court challenges the introduction of his Logan County *convictions* during his Auglaize County trial; and (2) before the state courts, Barnett did

---

6  Respondent's Answer/Return of Writ fails to address the merits of ground two.   Respondent is cautioned in future submissions to also brief the merits of a petitioner's ground for relief, even if it his or her position that such a claim is procedurally defaulted or unexhausted.   Supplemental briefing on an expedited schedule may be required in the future in the event of such an oversight.

not fairly present an identical federal Due Process claim. [7] (R.6, PageID #80-81).

With respect to the former argument, the Court finds that Respondent's interpretation of the petition is overly technical, especially in light of Petitioner's *pro se* status.   Generally, a court is required to liberally construe a *pro se* habeas petition. *See Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) ("The allegations of a *pro se* habeas petition, though vague and conclusory, are entitled to liberal construction. The appropriate liberal construction requires active interpretation in some cases to construe a *pro se* petition to encompass any allegation stating federal relief.") (internal quotation marks and citations omitted).   Furthermore, a review of Petitioner's traverse reveals that he is essentially raising the same argument that he raised in state court – that the jury improperly heard from four fact witnesses regarding the contents of his Logan County home. (R. 8, PageID# 1864-1866).   The traverse does not allege that Petitioner's Logan County convictions were improperly presented to the jury. (*Id*.)   Despite this clarification, Respondent's reply to the traverse continues to maintain that ground three should be dismissed on procedural grounds. (R. 9, PageID# 1874).   The Court disagrees and construes ground three as raising the same claim raised in state courts – that the admission of the disputed evidence violated Ohio's evidentiary rules. Whether ground three presents a cognizable claim shall be addressed below.

The Court, however, agrees with Respondent's second argument – that ground three, to the extent it seeks to raise a federal Due Process claim, raises a claim that was not fairly presented to the state courts.   As mentioned earlier, a petitioner can take four actions in his brief which are significant to determining whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state

---

7   Respondent also argues that ground three is not cognizable to the extent it alleges an error of state law. (R. 6, PageID# 80-81).   This argument is distinct from an argument that a claim has not been fairly presented or is unexhausted, and is addressed by the Court in the "Review on the Merits" section, *infra*.

cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton*, 349 F.3d at 877. Nevertheless, it is also well-established that an "isolated allusion to constitutional rights to due process and a fair trial" does not afford adequate notice to the state courts that a Due Process Clause argument is being raised. *Katt*, 271 Fed. App'x at 482.

A review of Petitioner's briefs before the state appellate court reveals no meaningful due process argument.   The only reference to the Fifth and Fourteenth Amendments occurred in the heading to the argument, and there is a single conclusory sentence, wherein Petitioner alleged that his conviction was "dependent upon speculation and inferences, so the jury's exposure to the prejudicial other-act evidence violated [his] right to due process of law." (R. 6-1, PageID# 172-175, Exh. 25).   Petitioner did not present his argument in terms of constitutional law or argue that he was denied a specific constitutional right.   Rather, Petitioner's argument revolved entirely around alleged violations of the Ohio Rules of Evidence and Ohio cases discussing how those rules are to be applied. (*Id*.)   Petitioner did not cite a single federal case employing any federal constitutional analysis.   He did, however, rely on six Ohio cases but only one even mentions the phrase "due process." *State v. Williams*, 134 Ohio St. 3d 521, 983 N.E.2d 1278 (Ohio 2012); *State v. Mann*, 19 Ohio St. 3d 34, 482 N.E.2d 592 (Ohio 1985); *State v. Lundgren*, 73 Ohio St. 3d 474, 653 N.E.2d 304 (Ohio 1995); *State v. Flonnory*, 31 Ohio St. 2d 124, 285 N.E.2d 726 (Ohio 1972); *In re C.T.*, 991 N.E.2d 1171, 2013-Ohio-2458 (Ohio Ct. App., 2013); *State v. Carter*, 2002-Ohio-4092, 2002 WL 1823034 (Ohio Ct. App., Aug. 8, 2002).   That lone case, the *Lundgren* decision, mentioned due process in the context of a prosecutorial misconduct claim. 653 N.E.2d at 319.

17

Therefore, to the extent ground three attempts to raise a federal due process violation, it is procedurally defaulted because it was not fairly presented to the state courts. Petitioner has offered no cause or prejudice to excuse the failure to raise such a claim, nor has Petitioner raised a claim of actual innocence based upon new, reliable evidence. (R. 8). Barnett cannot raise new issues in his Petition that he could have raised on direct appeal. Ground three should be dismissed as procedurally defaulted to the extent it attempts to raise a federal due process claim.

### 3. Ground Four: Maximum and Consecutive Sentences

In his fourth ground for relief, Petitioner asserts that his Sixth and Fourteenth Amendment rights were violated when he was sentenced to maximum and consecutive sentences. (R. 1, PageID# 8, 16). Respondent contends that Barnett did not fairly present a federal constitutional sentencing claim on direct appeal, and, therefore, ground four is procedurally defaulted. (R. 6, PageID# 87-88).

In order for a federal habeas claim to have been considered "fairly presented" to a state's courts, the claim must have been raised before the state's highest court, as only in this manner will the state courts have been provided with a fair opportunity to pass upon and correct alleged violations of federal rights. *See Anderson v. Harless*, 459 U.S. 4, 6, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982); *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971); *Coleman v. Thompson*, 501 U.S. 722, 735, 111 S. Ct. 2546, 115 L. Ed. 2d 640(1991). "Fair presentation of an issue requires that a petitioner give state courts a full opportunity to resolve any constitutional issues by involving 'one complete round' of the state's appellate review system." *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003) (*quoting O'Sullivan*, 526 U.S. at 845).

Here, it is evident that Barnett never completed a full round of review in state court with respect to the federal constitutional sentencing claim he attempts to raise in ground four. The

claim was not raised on direct appeal before the state appellate court, nor was it raised on discretionary appeal before the Supreme Court of Ohio. (R. 6-1, PageID# 162-196, 241-272, 293-323, Exhs. 25, 29 & 32).   While Barnett did raise a sentencing argument in the guise of an ineffective assistance of appellate counsel claim in his Rule 26(B) application, he did not timely appeal the denial of that application to the Supreme Court of Ohio.   Barnett's failure to fairly present a federal ground for relief to the Ohio Supreme Court "constitutes an adequate and independent state procedural rule barring habeas review." *Hines v. Brunsman*, 2010 WL 750176 at *18 (N.D. Ohio Feb. 26, 2010) (*citing Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004)).

Therefore, ground four is procedurally defaulted.   Barnett's traverse fails to set forth any cause to excuse his default nor does he allege any prejudice. (R. 8, PageID# 1853-1860).   He does appear to claim that he attempted to present a sentencing argument to the Ohio Supreme Court, but was unable to do so because the Ohio Supreme Court does not accept delayed appeals.   (*Id.* at PageID# 1857-1858).   Pursuant to Ohio S. Ct. Prac. R 7.01(A)(4)(C), "[t]he Clerk shall refuse to file motions for delayed appeal involving postconviction relief or App.R. 26(B)."   Fair presentation requires raising a claim in a manner that the state court could actually consider.   Any attempt by Barnett to file a delayed appeal from his 26(B) application would not have satisfied the requirement that an issue be presented to a state's highest court. *See, e.g., Dickerson v. Warden, Ross Corr. Inst.*, 2016 WL 1642963 at *9 (S.D. Ohio Apr. 26, 2016) (finding the petitioner procedurally defaulted his claim of ineffective assistance of appellate counsel, because he failed to appeal the denial of his application to reopen pursuant to Ohio Appellate Rule 26(B) and could no longer do so under Ohio S.Ct.Prac.R. 7.01(A)(4)(c)); *Crawford v. Lazaroff*, 2016 WL 791608 at *9 (N.D. Ohio Jan. 14, 2016) ("because the Supreme Court of Ohio does not permit delayed

appeals for post-conviction petitions, Crawford would be procedurally barred from bringing these claims in state court [and is] procedurally barred from pursuing these claims in federal court."); *Robbins v. Warden, Chillicothe Corr. Inst.*, 2016 WL 1039568, at n. 5 (S.D. Ohio Mar. 7, 2016), *report and recommendation adopted*, 2016 WL 1572963 (S.D. Ohio Apr. 19, 2016) (same).

Petitioner has offered no explanation for his failure to timely file an appeal from the state appellate court's denial of his 26(B) application. (R. 8). Again, he has not raised a claim of actual innocence based upon new, reliable evidence. (*Id.*) At this juncture, ground four should be dismissed as procedurally defaulted because Petitioner could no longer raise his unexhausted claim in state court.

## IV. Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not

mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent"
also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*,
288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court
arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if
the state court decides a case differently than [the Supreme] Court has on a set of materially
indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's
decision involves an unreasonable application of clearly established federal law "if the state court
identifies the correct governing legal principle from [the Supreme] Court's decisions but
unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal district
court, however, may not find a state court's decision unreasonable "simply because that court
concludes in its independent judgment that the relevant state court decision applied clearly
established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court
must determine whether the state court's decision constituted an objectively unreasonable
application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts
defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006)
(*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**A.   Ground One: Ineffective Assistance of Trial Counsel**

In his first ground for relief, Petitioner asserts that trial counsel rendered ineffective
assistance by: (1) failing to present evidence that would have impeached the testimony of State's
witnesses; and (2) failing to present the so-called alibi testimony of Ayris Gilbertson and Gina
Lopez. (R. 1, PageID# 5, R. 8, PageID# 1861-1863).

When addressing a claim of ineffective assistance of counsel, courts apply the familiar

21

standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to

demonstrate both that: (1) his counsel's performance was deficient; and (2) the allegedly

ineffective assistance resulted in prejudice to the petitioner.

> A convicted defendant's claim that counsel's assistance was so defective as to
> require reversal of a conviction or death sentence has two components.   First, the
> defendant must show that counsel's performance was deficient.   This requires
> showing that counsel made errors so serious that counsel was not functioning as the
> "counsel" guaranteed the defendant by the Sixth Amendment.   Second, the
> defendant must show that the deficient performance prejudiced the defense.   This
> requires showing that counsel's errors were so serious as to deprive the defendant
> of a fair trial, a trial whose result is reliable.   Unless a defendant makes both
> showings, it cannot be said that the conviction or death sentence resulted from a
> breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.   The *Strickland* standard applies "regardless of whether a [p]etitioner

is claiming ineffective assistance of trial counsel or ineffective assistance of appellate counsel."

*Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).   To establish the prejudice component of the

*Strickland* standard, a defendant must show that there is "a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different."

*Lundgren v. Mitchell*, 440 F.3d 754, 799 (6th Cir. 2006) (citations omitted).

Where the state appellate court correctly identifies *Strickland* as the standard for assessing

a petitioner's ineffective assistance claim, its ruling must constitute an unreasonable application of

the *Strickland* standard in order for the petitioner to receive habeas relief. *Knowles v. Mirzayance*,

556 U.S. 111, 123 (2009) ("The question is not whether a federal court believes the state court's

determination under *Strickland* was incorrect but whether that determination was unreasonable – a

substantially higher threshold.") (internal quotation marks omitted).   Because the performance

and prejudice components of the *Strickland* test are mixed questions of law and fact, they are

subject to *de novo* review by a habeas court. *See Carter v. Bell*, 218 F.3d 581, 591 (6th Cir. 2000).

22

Federal habeas courts, however, must also employ "a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13, 187 L. Ed. 2d 348 (2013); *see also Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388 (2011) ("Our review of the [state court's] decision is thus doubly deferential. We take a highly deferential look at counsel's performance through the deferential lens of § 2254(d).") (internal citations and quotation marks omitted).

Here, the state appellate court, after identifying the *Strickland* standard's two-pronged test, addressed Barnett's claims as follows:

{¶ 20} Barnett's complaints include several instances of the alleged failure to impeach State's witnesses for prior inconsistent statements (*see* Supplemental Br. at 2), failure to call additional alibi witnesses (*see id*. at 3–4), * * * We first note that Barnett failed to support his allegations in this assignment of error with references to "the place in the record where each error is reflected," as required by App.R. 16(A)(3).  The Supplemental Brief filed by Barnett includes some attachments, which appear to be excerpts from a transcript or transcripts.  These pages are not certified or authenticated and we are unable to determine what they represent.  Furthermore, they do not appear to be a part of the trial record and no application to supplement the record has been made.  Therefore, we cannot consider these attachments in resolving the issues on appeal. *See State v. Zhovner*, 2013-Ohio-749, 987 N.E.2d 333, ¶ 11 (3d Dist.) ("Evidence not made part of the record that is attached to an appellate brief cannot be considered by a reviewing court."); *State v. Grant*, 10th Dist. Franklin Nos. 12AP–650, 12AP–651, 2013-Ohio-2981, ¶12 (July 9, 2013) ("An exhibit merely appended to an appellate brief is not part of the record, and we may not consider it in determining the appeal.").

{¶ 21} We proceed to review Barnett's claim of ineffective assistance of counsel based on the record properly before us.  The burden is on the defendant to establish a claim of ineffective assistance of counsel and Barnett fails to satisfy this burden so as to rebut the strong presumption that his trial counsel's performance fell within the wide range of reasonable professional assistance. *See State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62; *State v. Robinson*, 108 Ohio App.3d 428, 431, 670 N.E.2d 1077 (3d Dist.1996).

{¶ 22} There is no support in the record for Barnett's claims that the State's witnesses made prior inconsistent statements.  Therefore, we cannot find that attorney Siesel's performance fell below an objective standard of reasonable

representation for failure to impeach those witnesses.   While Barnett claims that his trial counsel failed to call two defense witnesses who would have provided an alibi, the trial transcript shows the following colloquy with the trial court:

> THE COURT: Mr. Barnett, your attorney has talked to you about your option and your right to testify or right to remain silent.
>
> ROBBY BARNETT: Yes, sir.
>
> THE COURT: And he has indicated you're not going to be calling any additional witnesses, including yourself; is that correct?
>
> ROBBY BARNETT: That's correct.
>
> THE COURT: And that is your free and voluntary decision?
>
> ROBBY BARNETT: That's correct.

(Tr. at 1051–1052.) The record indicates that it was Barnett's decision not to call additional witnesses.

*Barnett*, 2015-Ohio-224 ¶¶20-22.

Petitioner's argument is not altogether clear.   The petition itself is rather bare-boned and conclusory, and the traverse sheds little additional light on his arguments.   He asserts that counsel failed to present evidence that would have impeached the testimony of State's witnesses.   As best as this Court can understand, Petitioner believes Detective Phil Bailey was never present at his residence and that counsel should have elicited evidence to demonstrate this alleged fact. (R. 8, PageID# 1861-1862).   The state appellate court's decision hinged on its determination with respect to the first prong of the *Strickland* test, as it found that counsel's performance was not deficient because there was simply no evidence in the record before it to support Barnett's contention that the State's witnesses made inconsistent statements.   Neither the petition nor the traverse draws this Court's attention to any of evidence of record that would render the state court's determination unreasonable.

24

Turning to petitioner's argument that counsel erred by failing to present the so-called alibi testimony of Ayris Gilbertson and Gina Lopez,[8] the trial court reasonably determined, based on the exchange quoted above, that it was Barnett's "free and voluntary" decision not call any witnesses in his defense rather than defense counsel's decision.

Given the deferential standard accorded to state court determinations, the Court cannot conclude that the state court's decision involved an unreasonable application of clearly established federal law or that its decision was based on an unreasonable determination of the facts in light of the evidence presented.

**B.   Ground Two: Fifth Amendment Violation of Right Against Self-Incrimination**

In his second ground for relief, Petitioner asserts that his right against self-incrimination, guaranteed by the Fifth Amendment of the United States Constitution, was violated when the jury heard portions of an interview taken at Petitioner's residence by police Detective Vorhees and Sergeant Burke. (R. 1, PageID# 7).   Specifically, Petitioner contends that he made several requests for counsel, that a portion of an audio recording of the interview was played for the jury over the defense counsel's objection, and that the trial court ultimately stopped the recording from being played but failed to instruct the jury with respect to portions of the interview it had heard. (*Id.*; R. 8, PageID# 1863-1864).

As stated above in the section addressing fair presentation and exhaustion, the Court will only consider ground two in the manner in which it was raised before the state courts – as a claim of ineffective assistance of counsel rather than as a freestanding Fifth Amendment claim.

---

8   Petitioner contends that these witnesses could have testified that they saw Petitioner's hands the day after the fire and that Petitioner did not have any burns on his hands at that time.   Even if true, the testimony does not tend to establish an "alibi," which demonstrates "the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time." Black's Law Dictionary 87 (10th ed. 2014).

25

Therefore, the *Strickland* standard, set forth in the Court's analysis of ground one, also applies to ground two and need not be restated.

The state appellate court noted Barnett's argument that counsel was ineffective for his "failure to prevent playing of the recorded police interview in which Barnett allegedly made incriminating statements." *Barnett*, 2015-Ohio-224 ¶20.   In addressing Barnett's Fifth Amendment self-incrimination argument through the lens of an ineffective assistance of counsel claim, the state appellate court found as follows:

> [*P23] We find no merit in an allegation that due to the counsel's ineffectiveness, the jury was allowed to hear incriminating evidence from the recorded police interview that prejudiced Barnett so as to deprive him of a fair trial.   While part of a recorded police interview was admitted in the record, it did not include any prejudicial incriminating statements.   The record discloses that Mr. Siesel did object to playing the recorded interview in front of the jury (Tr. at 875-879, 885-886), and that the only part of the interview that was played included Barnett's statements regarding not being in Aldrich's trailer at or around the time of the fire.
>
> [*P24] Furthermore, we do not find the second element of the *Strickland* test for ineffective assistance of counsel to be satisfied, where Barnett's brief merely speculates that the jury "may have discarded" [sic] the witnesses' testimony "and either acquitted defendant or entered a lesser included offense."   (Supplemental Br. at 3; *see also id.* at 5.)   The standard for prevailing on the claim of ineffective assistance of counsel is "a reasonable probability," not a mere speculation, that the result of the trial would have been different.

*Barnett*, 2015-Ohio-224 ¶¶ 23-24.

The Court's own review of the trial transcript confirms that defense counsel objected to the playing of portions of the audio recording on several occasions. (R. 6-9, PageID# 1503-1508, 1513-1517; Vol. 8, Tr. 875-880, 885-889).   Furthermore, the trial court stopped the audio recording from being played before the point in the recording where Barnett stated that he wished to have counsel before any further discussion took place. (R. 6-9, PageID# 1517; Vol 8, Tr. 889).   While the contents of the recorded interview are not contained in the trial transcript for this Court's

26

review, Barnett cites no evidence of record to challenge the state court's determination that the portion of the interview that was played did not include any prejudicial incriminating statements. There is nothing unreasonable about the state court's determination that Barnett was simply not prejudiced by the admission of those portions of the recording that were played for the jury.[9]

Finally, the Court has limited its consideration of ground two to an ineffective assistance of trial counsel claim, because Petitioner did not raise a free-standing claim that his right against self-incrimination was violated before the state courts. Although the Court need not decide the matter, it is highly questionable whether the facts of this case even present a colorable Fifth Amendment claim. The Supreme Court has observed that "[t]he Fifth Amendment itself does not prohibit all incriminating admissions; '[a]bsent some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions.'" *New York v. Quarles*, 467 U.S. 649, 654, 104 S. Ct. 2626, 2630, 81 L. Ed. 2d 550 (1984). The Sixth Circuit Court of Appeals has found that police interrogations that take place at a defendant's home, as occurred here, "typically do not rise to the kind of custodial situation that necessitates *Miranda* warnings because the home presumably is the one place where individuals will feel most unrestrained in deciding whether to permit strangers into the house, in moving about once the police are there, in speaking as little or as much as they want, in curbing the scope of the interview or in simply asking the officers to leave." *United States v. Conder*, 529 Fed. App'x 618, 622 (6th Cir. 2013) (internal quotations and citations omitted); *see also United States v. Hinojosa*, 606 F.3d 875 (6th Cir. 2013) (finding it "significant" that the questioning occurred at the defendant's home, as the Sixth Circuit "has found that such a venue generally does not present a coercive

---

[9] This conclusion remains the same even if the Court were to determine that counsel's performance was deficient for failing to move for a mistrial or to seek the exclusion of the entire contents of the interview, but there is no basis to find counsel's performance was deficient.

environment."); *Schultz v. Howes*, 2014 WL 2085194 at *11 (E.D. Mich. May 17, 2014) ("Petitioner was not charged, nor in custody, nor was he in any way restrained. His Fifth Amendment rights were not violated; therefore, the officers were not obligated to give him *Miranda* warnings.")

    For the reasons stated, ground two should be dismissed.

**C.  Ground Three: Admission of "Other Acts" Evidence**

    In his third ground for relief, Petitioner avers that his due process rights were violated when the trial court allowed the prosecution to introduce "unrelated other acts evidence." (R. 1, PageID# 8, 16).   As discussed above in the procedural default section, a review of Petitioner's traverse reveals that he is essentially raising the same argument that he raised in state court, that "other acts" evidence from numerous witnesses was improperly admitted under state law. (R. 8, PageID# 1864-1866).   To the extent Barnett seeks to raise a violation of his due process rights, such a claim is defaulted as explained above.   However, as explained below, on rather rare occasions, a state evidentiary ruling could result in a denial of due process if it deprives a petitioner of a fundamentally fair trial.

    Respondent contends that Petitioner's remaining claim, that "other acts" were admitted at his trial in violation of the Ohio Rules of Evidence, is based on state law and, therefore, non-cognizable as a habeas claim. (R. 6, PageID# 80).   Respondent is correct that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.") Federal habeas courts "do not pass upon errors in the application of state law, especially rulings regarding the admission or exclusion of evidence." *Coleman v. Mitchell*, 244 F.3d 533, 542-543

(6th Cir. 2001). "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000), *cert. denied*, 532 U.S. 989, 121 S. Ct. 1643, 149 L. Ed. 2d 502 (2001) (*quoting Montana v. Egelhoff*, 518 U.S. 37, 43, 135 L. Ed. 2d 361, 116 S. Ct. 2013 (1996)). Nonetheless, the category of infractions that violate "fundamental fairness" has been defined "very narrowly." *Wright v. Dallman*, 999 F.2d 174 (6th Cir. 1993).

Here, the state appellate court noted that the evidence challenged by Barnett – evidence from his home suggesting his involvement in the manufacturing of methamphetamine and prior fires at his residence – was not used to show he committed crimes in Logan County, but rather as circumstantial evidence that Barnett was cooking methamphetamine at the victim's trailer home when it caught fire. *Barnett*, 2015-Ohio-224 ¶¶ 9-12. The state appellate court agreed with the trial court that even if the evidence were considered prohibited "other acts" evidence, it was nonetheless admissible under an exception to Ohio Evid. R. 404(B) as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* More specifically, the state appellate court determined the following:

> [*P13]   The evidence collected in Barnett's residence in Logan County showed that similar drug manufacturing tools were found in both places: Barnett's apartment and Aldrich's trailer. (*See* Tr. at 550-560, 735-738, 896-898; see also Ex. 136-149.)   Additionally, evidence of prior fires, consistent with fires caused by illegal manufacture of methamphetamine was found. (Tr. at 668-671.)   These similarities found in both places made more probable the fact that the same person cooked methamphetamine in both places.   Thus, this evidence was relevant to showing identity, or a similar modus operandi, a permissible purpose under Evid.R. 404(B). *State v. Lowe*, 69 Ohio St.3d 527, 531, 1994-Ohio-345, 634 N.E.2d 616 (1994) ("Other acts may also prove identity by establishing a *modus operandi* applicable to the crime with which a defendant is charged.").

"'Other acts' may be introduced to establish the identity of a perpetrator by showing that he has committed similar crimes and that a distinct, identifiable scheme, plan, or system was used in the commission of the charged offense." *State v. Smith* (1990), 49 Ohio St.3d 137, 141, 551 N.E.2d 190, 194.   While we held in *Jamison* that "the other acts need not be the same as or similar to the crime charged," *Jamison*, syllabus, the acts should show a modus operandi identifiable with the defendant. *State v. Hutton* (1990), 53 Ohio St.3d 36, 40, 559 N.E.2d 432, 438.

A certain modus operandi is admissible not because it labels a defendant as a criminal, but because it provides a behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator.   Other-acts evidence is admissible to prove identity through the characteristics of acts rather than through a person's character.   To be admissible to prove identity through a certain modus operandi, other-acts evidence must be related to and share common features with the crime in question. *Id.* at 531.

[*P14] Barnett contends that the items found in his apartment and in Aldrich's trailer were "not unique to Mr. Barnett's Logan County home or Mr. Aldrich's trailer," and for that reason, they were not sufficient to constitute a "behavioral fingerprint" under *Lowe*. (Reply Br. at 2)   Yet, the modus operandi exception does not require unique items; rather, it applies to "acts forming a unique, identifiable plan of criminal activity." *Lowe* at 531, quoting *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990), syllabus.   Thus, in *Jamison*, the Ohio Supreme Court found the same modus operandi although the acts performed by the defendant were not unique, and not even identical to the crime in question, because in spite of certain differences, "[t]he acts remained probative as to identity." *Jamison* at 186-187.   "Other-acts evidence need be proved only by substantial proof, not proof beyond a reasonable doubt." *Id.* at 187, citing *State v. Carter*, 26 Ohio St.2d 79, 83, 269 N.E.2d 115 (1971).   We do not find abuse of discretion in the trial court's finding that the test for modus operandi was satisfied because the items found in Barnett's apartment and the evidence of fires sufficiently resembled those found in Aldrich's trailer.   Therefore, they satisfy the "substantial proof" requirement by sharing "common features with the crime in question." *Lowe* at 530, 531.

[*P15]   Barnett takes issue with the fact that the trial court did not conduct a written prejudice analysis in its journal entry.   He quotes the Ohio Supreme Court's decision, where a three-part analysis for admissibility of other acts evidence was outlined as follows:

The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.   Evid.R. 401.

30

The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. See Evid.R 403.

*Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20.   Barnett demands reversal of his conviction alleging that he was prejudiced because four witnesses testified "about the contents of his Logan County home," which disclosed other-acts evidence. (App't Br. at 8.)

[*P16] We first note that in order to warrant exclusion of evidence, its probative value must be "substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." (Emphasis added.)   Evid. R. 403. As the Ohio Supreme Court explained:

> "'Exclusion on the basis of unfair prejudice involves more than a balance of mere prejudice.   If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Rule 403.   Emphasis must be placed on the word "unfair."   Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision. Consequently, if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial.   Usually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than intellect.'"

*State v. Crotts*, 104 Ohio St.3d 432, 437, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 24 (2004), quoting *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172, 2001-Ohio-248, 743 N.E.2d 890 (2001).

[*P17]   We do not find that any unfair prejudice substantially outweighed the probative value of the evidence in this case.   The trial court gave specific limiting instructions to the jury, explaining that they were not allowed to use the testimony about "potential commission of other acts other than the offenses with which the Defendant is charged in this trial" for a finding that Barnett "acted in conformity or in accordance" with those acts. (Tr. at 889.)   The trial court explained,

> If you find that the evidence or [sic] other acts is true and the Defendant committed them, you may consider that evidence only for the purpose of deciding whether it proves the absence of mistake or accident, the Defendant's motive, opportunity, intent, purpose, preparation or plan to commit the offense charged in this trial, knowledge of circumstances surrounding the offense charged in this trial, the identity of the person who

committed the offense in this trial, but that evidence cannot be considered for any other purpose.

(Tr. at 899-900.)  In *Williams, supra*, at ¶24, the Ohio Supreme Court held that where the trial court instructed the jury that the evidence could not be used for impermissible propensity findings, the defendant was not unduly prejudiced.

*Barnett*, 2015-Ohio-224 ¶¶ 13-17.

The state appellate court's decision is well-reasoned, not contrary to nor an unreasonable application of clearly established federal law.   In *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003), *cert. denied* 540 U.S. 930 (2003), the Sixth Circuit addressed whether a petitioner was denied a fundamentally fair trial due to the admission of evidence concerning similar, uncharged acts of child molestation by petitioner.  *Bugh*, 329 F.3d at 511.   In *Bugh*, the petitioner argued that the admission of said evidence was so prejudicial that it "poisoned the trial and violated [his] right to a fundamentally fair trial." (*Id.*)   The Sixth Circuit rejected the petitioner's claim for habeas relief explaining as follows:

In this case, the admission of prior bad acts evidence was not contrary to clearly established Supreme Court precedent.   There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence.   In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior injury evidence violated due process, thus warranting habeas relief. 502 U.S. 62, 75, 116 L. Ed. 2d 385, 112 S. Ct. 475 (1991).   The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n.5.   Moreover, in *Spencer v. Texas*, 385 U.S. 554, 17 L. Ed. 2d 606, 87 S. Ct. 648 (1967), the Supreme Court rejected the argument that the Due Process Clause requires the exclusion of prejudicial evidence, even though limiting instructions were given and a valid state purpose is served. *Id.* at 563-64.   The Court recognized that it was not "a rule-making organ for the promulgation of state rules of criminal procedure.   And none of the specific provisions of the Constitution ordains this Court with such authority." *Id.* at 564. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172, 136 L. Ed. 2d 574, 117 S. Ct. 644 (1997); *Huddleston v. United States*, 485 U.S. 681, 99 L. Ed. 2d 771, 108 S. Ct. 1496 (1988), it has not explicitly addressed the

issue in constitutional terms.   Accordingly, the district court correctly found that there is no Supreme Court precedent that the trial court's decision could be deemed "contrary to," under AEDPA.

*Bugh*, 329 F.3d at 512-513.

The Court is compelled to reach the same conclusion here, as Barnett has not identified any intervening Supreme Court case finding a federal due process violation resulting from the admission of "prior bad acts" or "other bad acts" evidence introduced during a state criminal trial. Petitioner's reliance on the similar provisions of Federal Rules of Evidence 403 and 404 is misplaced.   As *Bugh* clearly explained, the federal evidentiary rules are not a substitute for clearly established federal constitutional law as set forth by the United States Supreme Court.

In light of the above, the Court finds that the trial court's admission of Barnett's "other acts" testimony did not deprive him of a fundamentally fair trial and did not offend "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana*, 518 U.S. at 43 (*quoting Patterson v. New York*, 432 U.S. 197, 202, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977)).   Therefore, ground three should be dismissed.

## V.   Conclusion

For the foregoing reasons, it is recommended that Barnett's Petition be DENIED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: November 16, 2016

33

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (14) days after the party objecting has been served with a copy of this Report and Recommendation.   Failure to file objections within the specified time may waive the right to appeal the District Court's order.   *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).